De Wolf v. The Royal Trust Co.

## Wallace L. De Wolf v. The Royal Trust Company et al.

1. RECEIVERS—*Can Not Contract Without the Sanction of the Court.*—A receiver is always subject to the orders of the court appointing him, and can make no contracts without the sanction of such court.

2. SAME—*Can Not Elect to Assume a Lease to the Insolvent.*—Without the sanction of the court a receiver can not elect to bind the estate of the insolvent on a lease, by his own independent action. And if a landlord desires to hold a receiver for the full term of the lease, he should promptly apply to the court when the receiver takes possession of the demised premises, when the court may order that the receiver hold the

premises for the full term of the lease or that he surrender possession to the landlord.

3.  SAME —*Not Liable on Lease to Insolvent Without an Order of the Court.*—A receiver who takes possession of demised premises, and occupies them under the order of the court for a time sufficient to allow him to wind up the business of the insolvent firm, can not be held liable for rent according to the terms of the lease in the absence of any order by the court that the lease be assumed.

**Intervening Petition,** in receivership proceedings. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Mr. Justice SEARS dissenting. Opinion filed December 23, 1897.

FIREBAUGH & DRAPER, attorneys for appellant.

SMITH & ELLIS, attorneys for appellees.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

Benjamin F. Smith, sole surviving partner of the firm of Hiram P. Smith & Co., filed his bill in the Circuit Court of Cook County against Mattie C. Smith, the administratrix of Hiram P. Smith, deceased, to wind up said partnership and for the appointment of a receiver. Appellee was appointed by said court receiver, and it qualified and entered upon its duties as such October 26, 1896.

Later appellant filed two petitions, successively, asking to be made a party defendant, and the vacation of the order appointing the receiver, and for its discharge, which petitions were on hearing denied by the court.

Again, on February 10, 1897, appellant filed another intervening petition, setting forth that on April 13, 1896, he made a lease to said firm of Smith & Co. of certain store rooms and basement, known as Nos. 113 to 119 West Van Buren street, Chicago, from May 1, 1896, to April 13, 1897, at the rate of $75 per month, payable in advance on the first day of each month of said term, commencing May 1, 1896; that said premises were and are the premises used and occupied by said Smith & Co. for carrying on all of its business; that there was due petitioner for rent of said premises from said Smith & Co., when said receiver took possession thereof, the sum of $135.54; that when said

receiver was appointed, it immediately took possession of all of said premises, and continued to occupy and use the same under and by virtue of the terms of said lease, and that on February 1, 1897, there became due to petitioner, according to the terms of said lease, for the month of February, 1897, for rent of said premises, the sum of $75, which still remains due and unpaid.

Said petitioner asked that said sum of $135.54 be allowed as a claim against said estate of Smith & Co., in favor of petitioner, as one of the general creditors, and that said sum of $75 be allowed against said receiver, and that it be paid as part of the costs of administration of said estate, and prior to the claims of the general creditors. The receiver answered said petition, and it was heard by the court on the following stipulation and notice thereto attached:

"It is hereby stipulated by and between the parties to this suit, as follows, to wit:

That the allegations in the said intervening petition of Wallace L. De Wolf contained, in reference to the amount of rent due October 1, A. D. 1896, to wit, the sum of one hundred thirty-five dollars and fifty-four cents ($135.54), are true as alleged in said intervening petition.

It is further stipulated that all the facts in relation to the other matters alleged in said intervening petition are as follows, to wit:

That at the time of the said appointment of the Royal Trust Company receiver herein, the business of H. P. Smith & Co., the insolvent estate in these proceedings mentioned, was holding and occupying premises known as Nos. 113, 115 and 119 West Van Buren street in the city of Chicago and State of Illinois, under lease bearing date April 13, A. D. 1896, by which lease the lessor therein mentioned, the said Wallace L. De Wolf, intervening petitioner herein, had let and leased the said premises to the said insolvent firm of Hiram P. Smith & Co. from the 1st day of May, A. D. 1896, until the 1st day of May, A. D. 1897, at a monthly rental, as per the terms of said lease, of seventy-five dollars ($75) per month, to be paid upon the first day of each month; that all of the business and assets of the said Hiram P.

Smith & Co., at the time of the appointment of the receiver herein, were situate and carried on at the said premises.

That at the time of the appointment of the receiver herein, the said receiver took possession of all of said premises mentioned in said lease under order of the court herein, and ever since said time has continued to occupy said premises under said lease, and on February 1, A. D. 1897, delivered to complainant a part of the said keys to said premises at the office of the intervening petitioner, and the balance of said keys to said premises it caused to be left at the office of intervening petitioner on February 3, A. D. 1897; that on January 22, A. D. 1897, it caused to be served upon the intervening petitioner a notice, which is hereto attached as 'Exhibit A,' and made a part hereof.

That the receiver has paid to the intervening petitioner the rent, as per the terms of said lease, from the said time it took possession of said premises up to February 1, A. D. 1897, since which time no rent has been paid for said premises; that the said leasehold estate was at the various times herein mentioned valuable to and available for the benefit of the creditors of said estate, and that the said receiver, at the time of its appointment herein, elected to take possession of said premises and occupy the same under the orders and direction of the court.

The above embraces all that ever took place between the intervening petitioner and the receiver in relation to said matter, or between the agents of either of said parties.

Dated February 16, 1897.

Smith & Ellis, solicitors for Royal Trust Company, receiver.

Firebaugh & Draper, solicitors for intervening petitioner."

" NOTICE.

In the Circuit Court of Cook County, Illinois.

Benjamin F. Smith, complainant,  
        vs.         } Bill 163,009.  
Mattie C. Smith, administratrix.

To Wallace L. DeWolf :

You are hereby notified that the undersigned will, on January 30, 1897, surrender to you the premises heretofore

occupied by it as receiver for the late firm of Hiram P. Smith & Co., said premises being no longer required by said receiver in administering said estate. The premises in question are known as Nos. 113, 115 and 119 West Van Buren street, Chicago. On said January 30, 1897, the keys to said premises will be surrendered at your office.

Dated January 22, 1897.

ROYAL TRUST CO.,
Receiver for Hiram P. Smith & Co.
By SMITH & ELLIS,
Attorneys."

No other evidence was introduced or heard by the court. The court allowed said claim of $135.54 to be paid with the general creditors of said estate, but disallowed the claim of $75 for rent of February, 1897, and found that the receiver vacated said premises prior to February 1, 1897, and surrendered the keys thereof to petitioner February 3, 1897; that the receiver in no way used or occupied said premises during February, 1897, or thereafter; that said receiver having failed to surrender said keys until February 3, 1897, said petitioner was entitled to rent for said premises up to and including February 3, 1897, amounting to $7.25, and ordered said receiver to pay said petitioner that amount as a preferred creditor. From this last order appellant appealed. The first six assignments of error question the propriety of the orders appointing said receiver, appointing Smith & Ellis as solicitors for said receiver, denying the motion of petitioner to be made a party defendant, denying his petition asking the discharge of the receiver, and in allowing said Smith & Ellis $50 for their services as solicitors for said receiver; but inasmuch as no appeal was taken from any order of the court except that in disallowing petitioner's claim for rent of $75, we can not and do not consider any of said alleged errors.

The only remaining question is as to whether the court erred in refusing said claim of $75. In the case of Smith v. Goodman, 149 Ill. 80, where the question was as to the liability of an assignee under a voluntary assignment for

the benefit of creditors, upon a lease to the insolvent made before the assignment, the court say : " While the assignee stands as the representative of the debtor, the purpose for which he is invested with title to the insolvent's property is that it may be collected and made available for the payment of the debts of the assignor. It might very well be that a term of years in land might be so burdened with the performance of conditions that it would be wholly valueless for any purpose of the trust. For that reason it has been uniformly held that the assignee may accept the assignment and enter upon the execution of the trust without becoming the assignee of the lease held by the insolvents, unless he elects so to do. (Citing cases.) And the assignee is entitled to a reasonable time in which to ascertain whether the leasehold estate can be made available for the benefit of creditors or not." The court further states that no general rule can be laid down as to the effect of specific acts of the assignee in determining whether there has been an election to take the leasehold property as part of the assigned estate, and says that from an examination of the adjudged cases the general principle would seem to be " that the assignee will not be held to have accepted the lease, unless it be shown that he has done so expressly, or by unequivocal acts, inconsistent with the right of entry by the landlord, has indicated an election to appropriate the leasehold estate."

In Spencer v. Columbian Expos., 163 Ill. 126, it was contended that the receiver, notwithstanding the contract of the insolvent to pay a specified rent, was only bound to pay a reasonable compensation for the privileges it enjoyed in occupying premises under order of the court appointing it; but the court held the receiver liable to pay at the rate contracted for by the insolvent for the time the premises were used by the receiver, being the full time of the insolvent's contract. The receiver took possession and carried on the business of the insolvent, which the insolvent had been unable to continue, to the end of the contract, and received all the profits and benefits of such possession and continuance of the business. The court recognizes the same

rule as applicable to a receiver, which, in the Smith case, *supra*, is applied to an assignee, except the court says, that the right to elect whether he (the receiver) will perform the contract of the insolvent or not, is subject to the order of the court, and that it is so laid down by many authorities.

On the same question, in case of Quincy, etc., Railroad Co. v. Humphreys, 145 U. S. 96, the court, quoting from Gaither v. Stockbridge, 67 Maryland, 224, said : " The ordinary chancery receiver, such as we have in this case, is clothed with no estate in the property. but is a mere custodian of it for the court, and by special authority may become an officer of the court to effect a sale of the property, if that be deemed necessary for the benefit of the parties concerned. If the order of the court under which the receiver acts embraces the leasehold estate, it becomes his duty, of course, to take possession of it; but he does not, by taking such possession, become assignee of the term in any proper sense of the word.    He holds that, as he would hold any other personal property involved, for and as the hand of the court, and not as assignee of the term." ·

And again, quoting from Sunflower Oil Co. v. Wilson, 142 U. S. 322, the court said : " The receiver did not simply, by virtue of his appointment, become liable upon the covenants and agreements of the railway company," citing cases. " Upon taking possession of the property, he was entitled to a reasonable time to elect whether he would adopt this contract and make it his own, or whether he would insist upon the inability of the company to pay, and return the property in good order and condition, paying, of course, the stipulated rental for it so long as he used it." * * * The court proceeds : " Tested by this rule, we are of opinion that these receivers did not become bound by an election, or by reason of any act of their own, or by any order of the court. The court did not bind itself or its receivers *eo instanti*, by the mere act of taking possession.    Reasonable time had necessarily to be taken to ascertain the situation of affairs."    See also U. S. Trust Co. v. Wabash W. Ry. Co., 150 U. S. 287; and Morrison v. Blackall, 68 Ill. App. 512.

In the latter case the extent of the landlord's contention was that the receiver was liable for the time he actually occupied at the rate fixed by the lease, the receiver having conducted the business of the insolvent in the leased premises for nearly two years, and the unexpired term of the insolvent's lease was about two years more.

That it is the general rule that a receiver is always subject to the order of the court appointing him, and can make no contracts but with the sanction of the court, is plain.

High on Receivers, § 390a, states the law in these words: "All contracts made by him, the receiver, are subject to modification by the court, and persons contracting with him are chargeable with notice of his limited powers in this regard, and deal with him at the risk of their contracts not being approved by the court."

Beach on Receivers, Sec. 257, states the same principle in these words: "Neither can he, the receiver, enter into contracts without the approval of the court. Although as receiver he may enter into negotiations and make such agreements as would be binding upon him as an individual, yet, in order to affect the funds in his hands, his acts must be ratified by the court. This rule is so well established that it has been decided that all persons contracting with a receiver are chargeable with knowledge of his inability to contract, and enter into contracts with him at their peril, and that the court has unquestioned power to modify or even vacate his agreements."

In Bispham's Equity, Sec. 580, it is stated, speaking of receivers: "His first duty may be said to be to take possession of the estate in the room and place of the owner thereof; and under the supervision of the court to manage the property so as to transfer the same, and if possible, to make it profitable for those who may ultimately be declared the owners thereof. The powers of a receiver are limited. All his actions are under the immediate control of the court, and in order to a safe custody of the estate he must continually apply to the court for its advice and sanction."

We therefore conclude that without the sanction of the

court the receiver may not elect to bind the estate of the insolvent on a lease, by his own independent action. It appears from this record that while the receiver occupied the demised premises, such occupancy was of advantage to the estate and was under the orders of the court, but it nowhere appears that he elected to take the lease as an asset of the estate, or that the sanction of the court went further than to approve of the action of the receiver in retaining the demised premises so long as such detention was of advantage to the estate.

It was equitable that the receiver should pay for the premises rent at the rate specified in the lease for the time he actually occupied the same, which was done. If the landlord had desired to hold the receiver for the full term of the lease, he should have promptly applied to the court when the receiver took possession of the demised premises, when the court, if it was thought it would be of advantage to the estate that the receiver hold the demised premises for the full term of the lease, could so direct, and then the liability of the receiver would be unquestioned; or if that was not deemed to be advantageous to the estate, the court could have directed the receiver to give possession to the landlord. It is too late, under the circumstances shown in this case, for the landlord, he having taken no action toward determining his relations to the receiver, to now claim that the receiver is liable for rent according to the terms of the lease, simply because the receiver took possession of the same and occupied, under the orders of the court, for a time sufficient to allow him to wind up the business of the insolvent firm.

The order and decree of the Circuit Court is affirmed.

Mr. Justice Sears, dissenting.

I do not concur in the conclusion reached by a majority of the court.

That the receiver here should be permitted to "elect" to retain the premises under the lease and occupy them for more than one-half of the term remaining unexpired when

he took possession as receiver, and then to "elect" to abandon the tenancy, seems to me to be inequitable in principle, nor do I think it supported by authority.

There can be no question as to the well established general rule that the receiver may not incur obligations, and thereby bind the estate, without the consent of the court which has made him its officer.

Neither can the rule be questioned which gives to the receiver—acting, of course and always, under the direction of the court—a reasonable time, during which he may retain premises formerly held by the insolvent under lease, without making himself, as receiver, privy to the lease or obligated under the terms of the tenancy, for the purpose of electing, within such reasonable time, whether it will be of benefit to the estate to accept the tenancy and treat the leasehold as an asset of the estate, either for sale as an asset, or for use in carrying on the business of the estate.

This rule is announced in Morrison v. Blackall, 68 Ill. App. 504, in the following terms: "We regard the rule to be that a receiver or an assignee of an insolvent may accept the trust conferred upon him without becoming the assignee of any lease held by the insolvent. Whether such assignee or receiver will become the assignee of or bound to pay rent provided in a lease held by the insolvent, is for the assignee or receiver to determine. He has a right to elect what he will do in this regard, and, if the landlord takes no action, a reasonable time within which to make such election. If he continue to remain in occupancy of the demised premises beyond such reasonable time, he will be presumed to have elected to accept the lease, and will be bound to pay the rent provided thereby."

In Smith v. Goodman, 149 Ill. 75, the court, in commenting upon this rule, say: "It is undoubtedly the rule that the assignee must make his election within a reasonable time, and will not be permitted to continue in the occupation of the premises unreasonably."

In Spencer v. Columbian Ex., 163 Ill. 127, the court say: "The general principle contended for by appellant that a

receiver has, subject to the order of the court, the right to elect whether he will perform the contract or not, and is entitled to a reasonable time after taking possession in which to make such election, is not denied. It is so laid down by many authorities. (Citing cases.) But we have been referred to no case holding that when the lease or contract is of itself a thing of value to the creditors, and the receiver, under the order of the court, takes possession of the premises and conducts the business which the insolvent has been unable to continue, and, without any act of disaffirmance or notice that he would not be bound by the contract, completes the time and receives the profits and all the benefits from such possession and continuance of the business, the receiver may then repudiate the contract, and pay only on the basis of a *quantum meruit.*" * * * And the court continues, quoting from Smith v. Goodman, *supra :* "'There is not entire uniformity of decisions as to when the assignee will be held to have accepted the lease and bound himself to perform its covenants, and no general rule can be laid down as to the effect of specific acts of the assignee in determining whether there has been an election to take the leasehold as a part of the assigned property. An examination of the adjudged cases is valuable only as fixing the general principle by which the case is to be governed, which would seem to be that the assignee will not be held to have accepted the lease unless it be shown that he has done so expressly, or, by unequivocal acts inconsistent with the right of entry by the landlord, had indicated an election to appropriate the leasehold estate.' No reason is presented why the receiver may not either expressly elect, or, by unequivocal acts inconsistent with the right of entry by the landlord, indicating an election to appropriate the leasehold estate, be held to have done so impliedly, without any act on the part of the landlord putting the court or the receiver to an election."

Nothing inconsistent with this announcement of the rule by our Supreme Court is found in Sparhawk v. Yerkes, 142 U. S. 1; Sunflower Oil Co. v. Wilson, 142 U. S. 313; Quincy, etc., R. R. Co. v. Humphreys, 145 U. S. 82.

In U. S. T. Co. v. Wabash W. Ry. Co., 150 U. S. 287, the court say : " The general rule applicable to this class of cases is undisputed, that an assignee or receiver is not bound to adopt the contracts, accept the leases, or otherwise step into the shoes of his assignor, if in his opinion it would be unprofitable or undesirable to do so; and he is entitled to a reasonable time to elect whether to adopt or repudiate such contracts.  If he elect to adopt a lease, the receiver becomes vested with the title to the leasehold interest, and a privity of estate is thereby created between the lessor and the receiver, by which the latter becomes liable upon the covenant to pay rent."

From these decisions it is apparent that the rule as established contains these well defined propositions:

1st.  That the protected occupancy of the receiver during a reasonable time is for the purpose only of enabling him to elect whether the leasehold will be of benefit to the estate.

2d.  That such occupancy ends and privity of contract under the lease begins the moment such election is made, if it be an election to retain.

3d.  If without any express election the receiver remain in occupancy beyond a time reasonable for the purpose of election, he thereby impliedly elects to retain, and becomes obligated as receiver under the terms of the lease.

4th.  Such implied election by occupancy is presumed to be with consent and by direction of the court, if the receiver remains in occupancy to carry on the business of the estate under direction of the court.

In the case here under consideration, we have a stipulation as to facts, a part of which is as follows:

" That the receiver has paid to the intervening petitioner the rent, as per the terms of said lease, from the said time it took possession of said premises up to February 1, A. D. 1897, since which time no rent has been paid for said premises; that the said leasehold estate was at the various times herein mentioned, valuable to and available for the benefit of the creditors of said estate, and that the said receiver, at

the time of its appointment herein, elected to take possession of said premises, and occupy the same under the orders and direction of the court."

At the time when the receiver took possession of the premises, covered by the lease from petitioners to insolvent, there remained of the unexpired term less than six months. The receiver occupied and paid rent according to the terms of the lease for more than three months, *i. e.*, for more than one-half of the unexpired term.

It is obvious from this stipulation that the receiver occupied, not alone by his right to hold for a reasonable time, and upon a *quantum meruit* without regard to the terms of the lease, but that he occupied and paid rent upon the terms of the lease. Having so occupied, and for more than half of the unexpired term of the lease, he should be held to have impliedly elected to take the place of the insolvent under the lease. Morrison v. Blackall, *supra;* Spencer v. Columbian Ex., *supra.*

But aside from this implied election we have here the stipulation stating plainly that he did expressly so elect, and stating further that it, "the said leasehold estate" (not a fractional part of it), was, at the various times herein mentioned, "valuable to and available for the benefit of the creditors of said estate."

I am unable to find any case holding that the receiver may occupy at caprice the leasehold property beyond such reasonable time, or beyond the making of such election. The reasoning of all the cases clearly is, that the holding without assuming any liability under the lease is for one purpose only, viz., to determine whether the leasehold will be of benefit to the estate as an asset or for occupancy, and can never be beyond the making of such determination by election or the expiration of a reasonable time therefor.

That occupancy for the purpose of carrying on the business of the insolvent, such business being carried on by permission of the court, creates a presumption that the court approved the election, seems too clear to be controverted. Unless this were so, none of the cases cited could hold an implied election possible.

The rule surely gives no power to the receiver, whether acting under a specific order of court, or by its implied permission, to play fast and loose with the lessor, by electing to treat the leasehold as of value to the estate, remaining in occupancy under the lease for a part of the term, thereby becoming party to the lease, and then capriciously to elect again to nullify the contract and leave the lessor without remedy.

The giving of the eight-day notice by the receiver to petitioner, the landlord, could in no event affect the legal status of the parties.   If no privity under the lease had been created it was entirely unnecessary; and if such privity was created it could affect nothing.

Nor was it necessary after an election by the receiver that the landlord should demand an election, nor could such demand by the landlord be of any importance as affecting an implied election by the receiver by holding beyond a reasonable time.   Smith v. Goodman, *supra*.

I am of opinion that the order of the Circuit Court should have been reversed and the cause remanded with directions to allow the prayer of the intervening petitioner upon the stipulated facts.